IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| TAMMI LARSEN, in her individual capacity, and as natural parent and legal guardian of RYAN LARSEN, a minor child, | CASE NO. 8:23-cv-00190 |
| Plaintiffs, | |
| v. | **BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |
| SARPY COUNTY SCHOOL DISTRICT 77-0027 d/b/a PAPILLION LA VISTA COMMUNITY SCHOOL DISTRICT, and JANE DOES 1-3, individually, and in their official capacities, | |
| Defendants. | |

SARPY COUNTY SCHOOL DISTRICT 77-0027, d/b/a PAPILLION LA VISTA COMMUNITY SCHOOLS DISTRICT ("PLCS" or "School District" of "Defendants"), submits this brief in support of its motion to dismiss. The Complaint for Tammi Larsen ("Ms. Larsen"), individually and on behalf of her son Ryan Larsen, ("Plaintiffs") should be dismissed in its the entirety for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

## INTRODUCTION

This matter arises out of the disappearance of Ryan Larsen ("Ryan") after he walked out of La Vista West Elementary School (the "Elementary School") on May 17, 2021. During the incident in question, Ryan, had been diagnosed with several disabilities and had an Individualized Education Plan ("IEP"). (Complaint ¶¶ 14-16, 20, 26). Ryan has not been seen since the incident

in question, and no evidence has been found that would indicate his whereabouts. (Complaint ¶ 29).

Pursuant to Neb. Rev. Stat. §13-905, Plaintiffs presented a written claim to PLCS on or about February 1, 2022 for monetary damages due to the injuries they allegedly suffered. More than six months have lapsed since Plaintiffs' claim was submitted to PLSC. Plaintiffs withdrew their claim from PLCS's consideration on May 3, 2023. (Complaint ¶ 8). On or about January 10, 2023, Plaintiffs filed a Petition for Appointment as Special Administrator of the Estate of Ryan Larsen and filed a Petition for Presumption of Death of Missing Individual in the County Court of Sarpy County, Nebraska (the "Sarpy County Court") (Complaint ¶ 9). On February 21, 2023, the Sarpy County Court held a hearing on the Petition for Presumption of Death of Missing Individual. On April 27, 2023, the Sarpy County Court entered an Order denying the Petition for Presumption of Death of Missing Individual. The Sarpy County Court concluded that there was not yet sufficient clear and convincing evidence to conclude that Ryan "more than probably died than survived his disappearance following the incident in question." (Complaint ¶¶ 10-11).

Plaintiffs' Complaint, filed on May 12, 2023, in the above-captioned matter appears to assert the following claims against PLCS and unnamed members of its staff ( "Defendants"):

1. Defendants violated §504 of the Rehabilitation Act, 29 U.S.C. §794, by allegedly discriminating against Ryan's entitlement to a federally funded education. (Complaint ¶¶ 32-38).

2. Defendants violated Title II of the Americans with Disabilities Act, 42 U.S.C. §12132, by allegedly denying Ryan the benefit of the services, programs, or activities of a public entity. (Complaint ¶¶ 39-44).

3.  Defendants are liable under 42 U.S.C. §1983 for their violation of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §1400 et seq., by allegedly failing to provide Ryan and a "free appropriate public education." (Complaint ¶¶ 45-55).

4.  Defendants are liable under the 42 U.S.C. §1983 "state-created danger" doctrine in violation of the Fourteenth Amendment by allegedly creating the danger that caused harm to Ryan during the incident in question. (Complaint ¶¶ 56-63).

5.  Defendants were allegedly negligent in the supervision of Ryan during the incident in question. (Complaint ¶¶ 64-70).

6.  Defendants negligently inflicted emotional distress against Plaintiffs during and after the incident in question.  (Complaint ¶¶ 71-77).

Plaintiffs' claims that Defendants violated Title II of the ADA and §504 of the Rehabilitation Act fail because Plaintiffs have failed to exhaust administrative remedies and failed to demonstrate that Defendants' plausibly acted in bad faith or with gross misjudgment during the incident in question. Furthermore, Plaintiffs have primarily asserted that they are entitled to emotional damages, which are not available under either Title II of the ADA or §504 of the Rehabilitation Act. Plaintiffs' claim under the IDEA should be dismissed as Plaintiffs failed to exhaust administrative remedies, stated that any remedy under this statute would be "futile" and "inadequate" (Complaint ¶ 8), and the Complaint does not request any remedy under this statute. Plaintiffs failed to exhaust administrative remedies under §1415 of the IDEA, which is required when the "gravamen" of the case is the denial of a free appropriate public education.

Plaintiffs claim that Defendants violated the Fourteenth Amendment through §1983's "state-created danger" doctrine fails because Plaintiffs have failed to demonstrate the plausibility of: (1) Defendants' affirmatively putting Ryan in the risk of immediate and proximate harm; (2)

the risk to Ryan being obvious and known to Defendants; (3) Defendants acting recklessly and in conscious disregard of the risk to Ryan; and (4) Defendants' conduct, in total, shocking the conscience. Plaintiffs' state law tort claims should be dismissed for lack of jurisdiction because PLCS is a political subdivision and has not waived its sovereign immunity under the Political Subdivision Tort Claims Act ("PSTCA"). Furthermore, PLCS is exempt under the PSTCA because Defendants were executing state and federal statutes and were exercising a discretionary function in regard to the oversight of students under their care on Individualized Education Plans ("IEP"). Finally, the negligent infliction of emotional distress claim fails because the elements of such claim are not present.

## FACTS ALLEGED IN PLAINTIFFS' COMPLAINT

1. At all relevant times, Ryan was a resident of La Vista, Sarpy County, Nebraska, and had been attending the Elementary School. (Complaint ¶ 12-13).

2. Ryan had been diagnosed with absence seizures, autism spectrum disorder, and Tourette's disorder. Due to these disabilities, Ryan also had substantially delayed learning, social and communication skills. (Complaint ¶ 14-16).

3. Because of his disabilities, Ryan was placed under an IEP, as a student who qualifies as disabled under the IDEA. Ryan's IEP was regularly updated and modified by a team of special education professionals employed by PLSC. (Complaint ¶ 20-21).

4. Prior to the incident in question, PLCS had a documented history of Ryan running away from school. (Complaint ¶ 23).

5. On May 17, 2021, Ryan was unsupervised in a classroom at the Elementary School. During this period of time, Ryan walked out of the Elementary School. (Complaint ¶ 25-26).

6. Ryan has not returned or been retrieved since the incident in question. No evidence has been found that would indicate his whereabouts. (Complaint ¶ 29).

## ARGUMENT

### I.     Standard of Review

Failure to exhaust administrative remedies arguments are subject matter jurisdiction challenges. *M.P. ex. rel. K. v. Indep. Sch. Dist. No. 721*, 439 F.3d 865, 867 (8th Cir. 2006). The challenge can be on its face or on the factual truthfulness. Fed. R. Civ. P. 12(b)(1). A facial challenge is "whether the asserted jurisdiction basis is patently meritless by looking to the face of the complaint…and drawing all reasonable inferences in favor of the plaintiff." *Biscanin v. Merrill Lynch & Co.*, 407 F.3d 905, 907 (8th Cir. 2005). The motion to dismiss will succeed "if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993).

In order to succeed on a motion to dismiss, a defendant must prove that the complaint fails to contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief'" *Id.*, 556 U.S. at 679 (quoting Fed. R. Civ. Proc. 8(a)(2)). Where a complaint contains allegations that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 679 (quoting *Twombly*, 550 U.S. at 557).

Defendant is a Political Subdivision. Sovereign immunity is jurisdictional in nature; if sovereign immunity is found to apply, the trial court lacks subject matter jurisdiction over the action. *Fugett v. Douglas Cty.*, No. 8:21-CV-125, 2021 U.S. Dist. LEXIS 187186 (D. Neb. Sep. 29, 2021); *State ex rel. Rhiley v. Nebraska State Patrol,* 301 Neb. 241, 917 N.W.2d 903 (2018). Lack of subject matter jurisdiction may be raised at any time by any party or by the court *sua sponte*. *Davis v. Choctaw Const., Inc.,* 280 Neb. 714, 718, 789 N.W.2d 698, 701 (2010). "Subject matter jurisdiction is the power of a tribunal to hear and determine a case of the general class or category to which the proceedings in question belong and to deal with the general subject matter involved." *Concordia Teachers Coll. v. Nebraska Dep't of Labor*, 252 Neb. 504, 508, 563 N.W.2d 345, 348 (1997). Subject matter jurisdiction cannot be waived and the existence of subject matter jurisdiction cannot be agreed upon by the parties or conferred on the parties based on their conduct. *Id.* at 507-508, 563 N.W.2d at 348. The Nebraska Supreme Court further has stated that all Nebraska statutes purporting to waive sovereign immunity "are strictly construed in favor of the sovereign and against the waiver," and "A waiver of sovereign immunity is found only where stated by the most express language of a statute or by such overwhelming implication from the text as will allow no other reasonable construction." *Burke v. Bd. of Trs. of Neb. State Colleges,* 302 Neb. 494, 503, 924 N.W.2d 304, 309 (2019).

II.     **Plaintiffs' Claims Under Title II of the Americans with Disabilities Act and §504 of the Rehabilitation Act Should be Dismissed.**

   a.  *Plaintiffs have failed to exhaust administrative remedies under the IDEA*

§1415(l) of the IDEA states in relevant part,

[B]efore the filing of a civil action under [title II of the ADA or §504 of the Rehabilitation Act] seeking relief that is also available under [the IDEA], the

[IDEA's] administrative procedures shall be exhausted to the same extent as would

be required had the action been brought under [the IDEA].

To meet this exhaustion requirement, a suit must seek relief for the denial of a "free

appropriate public education (FAPE), §1401(3)(A)(1), because that is the only "relief the IDEA

makes "available." *Fry v. Napoleon Community Schools*, 580 U.S. 154, 165 (2017). In determining

whether a suit "seeks" relief for such a denial, a court should look to the substance, or gravamen,

of the plaintiff's complaint. *Id.* In other words, the examination "should consider substance, not

surface. The [non-use] of particular labels and terms is not what matter." *Id.* at 169. The

inquiry…does not ride on whether a complaint includes…the precise words "FAPE" or "IEP" *Id.*

at 169-70. Rather that being merely a pleading hurdle, §1415(l) "requires exhaustion when the

gravamen of a complaint seeks redress for a school's failure to provide a FAPE, even if not phrased

or framed in precisely that way. *Id.* at 170.

In *Fry*, the Supreme Court provided two hypothetical questions that should be asked when

determining whether the gravamen of a complaint's ADA and §504 claims against a school

concerns the denial of a FAPE, or instead addresses disability-based discrimination. First, "could

the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public

facility that was *not* a school[?]…And second, could an *adult* at the school…have pressed

essentially the same grievance? *Id.* at 171 (emphasis included). When the answer to these questions

is no, "then the complaint probably does concern a FAPE, even if it does not explicitly say so; for

the FAPE requirement is all that explains why only a child in the school setting (not an adult in

that setting or a child in some other) has a viable claim." *Id.*

Here, posing these questions to the facts alleged in Plaintiffs' Complaint leads to the

conclusion that the gravamen of Plaintiffs' ADA and §504 claims against PLCS concerns the

denial of a FAPE. Plaintiffs could not have brought essentially the claim against a public facility that was not a school. The main allegation in Plaintiffs' ADA and §504 claims is that Defendants allegedly failed to supervise Ryan during the school day despite their knowledge of his disabilities and his history of elopement. (Complaint ¶¶ 37-38, 43-44). This allegation specifically concerns educational accommodations, which no one can imagine would be brought against a public theatre or library, for example. *See Id.* at 172. Furthermore, no other adult could not have brought essentially the same claim against PLCS. Again, no one can imagine that an adult visitor or an employee would sue PLCS for a failure to receive accommodations meant for an elementary school student. *See Id.*

It may be argued that the Supreme Court's holding in *Luna Perez v. Sturgis Public Schools*, 143 S.Ct. 859, 865 (2023), rather than *Fry*'s holding, should control. However, the Supreme Court's analysis in *Perez* is inapplicable to the facts alleged in Plaintiffs' Complaint, and *Perez* did not overturn *Fry*. In *Perez*, the Supreme Court held that a deaf student did not have to first exhaust the IDEA's administrative procedures when the student brought an ADA claim seeking compensatory damages for a school district's alleged failure to provide a FAPE. *Id.* at 863. It was noted that the student's ADA claim was premised on a previous IDEA claim that was settled after the school district agreed to provide all forward-looking equitable relief the student requested. *Id.* at 862. Nevertheless, the Supreme Court determined that the ADA claim was an independent action that unambiguously sought "backward-looking relief in the form of compensatory damages." *Id.* To the Supreme Court, such facts did not satisfy the conditions precedent for the application of §1415(l)'s exhaustion requirement because that specific remedy is not provided by the IDEA. *Id.* at 865.

This case is not like *Perez* at all. Here, Plaintiffs' IDEA, ADA, and §504 claims are inextricably intertwined rather than resulting from independent actions. *See I.Z.M. v. Rosemount-Apple Valley-Eagan Pub. Sch.,* 863 F.3d 966, 972 (8th Cir. 2017). There has been no previous attempt to go through the IDEA administrative process, nor have Plaintiffs already obtained forward-looking equitable relief they have requested from PLCS. Instead, all three claims arise from the Complaint and are premised on Defendants' alleged failure to provide adequate supervision of Ryan. (Complaint ¶¶ 37-38, 43-44). In other words, for Defendants' alleged failure to provide a FAPE, not any disability-based discrimination. While Plaintiffs have asserted that a remedy under the IDEA would be "futile" and "inadequate" because they are seeking monetary damages (Complaint ¶¶ 54-55), there is no specific request in the Complaint for compensatory damages under the ADA or §504. (Complaint ¶ 79). Besides emotional damages, which are not available under IDEA, ADA or § 504, it is not entirely clear what Plaintiffs are seeking. Nonetheless, the claims fail.

### b. Plaintiffs have not alleged facts that can plausibly meet the elements for an ADA or §504 claim.

If the Court determines that exhaustion is not required, which it is, the claims still fail. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §12132. Similarly, §504 of the Rehabilitation Act provides that "[n]o qualified individual with a disability…shall, solely by reason of her or his disability, be excluded from participation in, or be denied the benefits of, or be subjected to discrimination" by any program receiving federal funds. 29 U.S.C. §794(a). For claims under the ADA and §504, courts have held that "enforcement, remedies, and rights are the same…" *B.M. ex rel. Miller v. South Callaway R-II Sch. Dist.,* 732

F.3d 882, 887 (8th Cir. 2013) (quoting *Birmingham v. Omaha Sch. Dist.*, 220 F.3d 850, 856 (8th Cir. 2000). Therefore, to survive a motion to dismiss for both acts, Plaintiffs must have alleged facts sufficient to satisfy three elements: (1) Ryan is a qualified individual with a disability; (2) he was discriminated against by being denied the benefits of a program or activity of a public entity receiving federal funds; and (3) he was discriminated against based on his disability. *Brown v. City of Jacksonville*, 711 F.3d 883, 888 (8th Cir. 2013) (citing 42 U.S.C. §12131 et seq.); *Estate of Barnwell by and through Barnwell v. Watson*, 880 F.3d 998, 1005 (8th Cir. 2018). Here, Plaintiffs failed to state a claim for violation of both the ADA and §504 because they did not allege facts that plausibly meet the second and third element.

For the second element, the Complaint is silent in stating how PLCS allegedly discriminated against Ryan and what benefits he was denied. There are general allegations that Ryan was not supervised, and that he was "denied benefits of the School District's programs." (Complaint ¶¶ 40). However, it does not say what Ryan missed out on or what benefits he did not receive. The Complaint essentially is Ryan ran away from school, and the School District should not have allowed that. This is not enough to meet the second element.

For the third element, courts have consistently held that "where alleged ADA and §504 violations are based on educational services for disabled children, the plaintiff must prove that school officials acted in bad faith, or with gross misjudgment." *I.Z.M.*, 863 F.3d at 972 (quoting *B.M. ex rel. Miller*, 732 F.3d at 887). "Because the ADA and §504 do not 'creat[e] general tort liability for education malpractice,' bad faith or gross misjudgment requires "something more" than mere non-compliance with the applicable federal statutes." *B.M. ex rel. Miller*, 732 F.3d at 887 (quoting *Monahan v. Nebraska*, 687 F.2d 1164, 1170 (8th Cir. 1982)). "The defendant's statutory noncompliance must deviate so substantially from accepted professional judgment,

practice, or standards as to demonstrate that the defendant acted with wrongful intent." *Id*. In other words, "[s]o long as the state officials involved have exercised professional judgment, in such a way as not to depart grossly from accepted standards among educational professionals, [the Court] cannot believe that Congress intended to create liability…" *Monahan*, 687 F.2d at 1171. This rule reflects what is believed to be a "proper balance between the rights of handicapped children, the responsibilities of state educational officials, and the competence of courts to make judgments in technical fields." *Id*. Therefore, to show that Ryan was denied a benefit on the basis of his disabilities under the ADA and §504, Plaintiffs must allege facts regarding the incident in question that meet this "something more" standard for bad faith or gross misjudgment on the part of Defendants. The Complaint fails to allege any action by PLCS that can be reasonably construed as an intentional act of bad faith or any omission rising to the level of gross misjudgment.

Caselaw has routinely shown that meeting this standard is a difficult burden for plaintiffs to carry. For example, in *Heidemann v. Rother*, 84 F.3d 1021, 1024 (8th Cir. 1996), a student was non-verbal, mentally and physically disabled, and also suffered from epilepsy. The school district's licensed physical therapist recommended that a technique called "blanket wrapping" be used to calm the student down. *Id*. at 1024-25. The student and their mother contended that the technique was used a means of physical restraint. *Id*. at 1026. On one occasion, the student's mother allegedly found the student wrapped on the floor with flies crawling around her mouth and nose, and the blanket was wrapped so tightly that the mother required assistance to remove it. *Id*. However, the 8th Circuit found that they could not say that the school district deviated grossly from accepted standards shared by qualified professionals, such as the school's licensed physical therapist. *Id*. at 1032.

In *M.Y. ex rel., J.Y. v. Special School Dist. No. 1*, 544 F.3d 885, 887 (8th Cir. 2008), a student's IEP stated that they were ineligible to receive extended school year ("ESY") services, which included curb-to-curb transportation on a special education bus. Therefore, the student was required to use general education transportation for summer school, which did not guarantee a bus driver that would be specially trained in the needs and sensitivities of children with disabilities. *Id.* When the student was returning home from summer school, a bus driver allegedly sexually abused the student two-blocks from the student's assigned bus stop. *Id.* Again, the 8th Circuit found that there was "no evidence in the record that the [school] [d]istrict possessed the requisite bad faith or gross misjudgment in denying [the student] special education transportation. *Id.* at 890. Rather, the school district's decision fully complied with the term of the student's IEP. *Id.*

Here, Plaintiffs assert that allowing Ryan to be unsupervised, despite Defendants being aware of his disabilities and history of elopement, amounted to "deliberate indifference" and a "gross departure from professional judgment, standards and practice…" (Complaint ¶¶ 37-38). However, Plaintiffs have also not pointed to any facts, such as standards shared by qualified professionals that work with disabled students like Ryan, to show that the lack of supervision was totally unacceptable in those circumstances. There are no allegations of what was actually required by Ryan's IEP, or whether there was any departure from the IEP. Without more than just their assumptions, Plaintiffs essentially claim that Ryan should not have ran away from school, but that does not meet the heightened standard for a violation of the ADA and §504. Indeed, Plaintiffs are attempting to turn an alleged negligence claim into a violation of §504 and the ADA, which does not meet the standard. Again, there is no factual content to plausibly show that Defendants were acting in bad faith or with gross misjudgment.

### c. *Emotional damages are unavailable under the ADA and §504*

Furthermore, for their claims under the ADA and §504, Plaintiffs have primarily alleged incurring emotional damages due to the incident in question. In their Complaint, Plaintiffs assert that they are entitled to damages for Ryan allegedly suffering "the loss of experiencing a normal educational life, mental and emotional distress, [and] the loss of companionships of his mother and siblings…" (Complaint ¶ 79). In addition, it is asserted that Ms. Larsen allegedly suffered "severe emotional distress caused by [Ryan's] disappearance, [and] the loss of his companionship since his disappearance…" (Complaint ¶ 80). The only allegation made by Plaintiffs that is arguably not purely for emotional damages is the loss of Ryan's life, (Complaint ¶¶ 79-80), which is still not available for relief under ADA or §504. Furthermore, as conceded by Plaintiffs, "there is not yet sufficient clear and convincing evidence to conclude that Ryan 'more than probably died than survived.'" (Complaint ¶ 11). Therefore, as it currently stands, the only damages that are possibly recoverable for Plaintiffs based on the facts alleged in their Complaint are emotional damages.

The issue for Plaintiffs that then arises is the unavailability of emotional damages, as a matter of law, under the ADA and §504. For §504, the Supreme Court considered in *Cummings v. Premier Rehab Keller, P.L.L.C.* 142 S.Ct. 1562 (2022) whether emotional distress damages are available for violations of the Rehabilitation Act, which was passed pursuant to Spending Clause of the U.S. Constitution that allows Congress to "fix the term on which it shall disburse federal money…" *Id.* (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981)). The Court first analogized Spending Clause legislation to contract law; that is, it considered the recipient of federal funds as having agreed to adhere to certain requirements in exchange for funds provided by Congress. *Id.* at 1569-70. Further, the Court relied heavily on its analysis in *Barnes v. Gorman*, 536 U.S. 181, 187 (2002), which held that "a federal funding recipient may be considered

'on notice that it is subject not only to those remedies explicitly provided by the relevant legislation, but also to those remedies traditionally available in suits for breach of contract'" *Id*. at 1571. Thus, as it was held in *Barnes* that punitive damages are not recoverable for violations of Spending Clause legislation because they are not generally available remedies in contract law, the Court similarly held that emotional distress damages are not recoverable because defendants cannot be treated as having consented to the possibility of such liability when it received federal funds. *Id*. at 1572. In sum, Plaintiffs cannot recover any emotional damages for their claims under §504 due to the Court's holding in *Cummings*.

For Plaintiffs' claims under the ADA, it may be argued that emotional damages should still be recoverable since the act is "non-Spending Clause" legislation. However, as noted above and in *Barnes*, "[t]he ADA could not be clearer that the 'remedies, procedures, and rights ... this subchapter provides' for violations of §202 are the same as the 'remedies, procedures, and rights set forth in' §505(a)(2) of the Rehabilitation Act, which is Spending Clause legislation" *Id*. at n. 3 (citing 42 U.S.C. §12133). In *Barnes*, the Court found this mirroring of Spending Clause legislation to be sufficient for holding that punitive damages are also not recoverable under Title II of the ADA. *Barnes*, 536 U.S. at 189. Therefore, given the Court's holding in *Cummings* regarding the unavailability of emotional damages under §504, this would similarly mean that emotional damages are not recoverable under Title II of the ADA as well. In sum, since Title II of the ADA statutorily has the same remedies as §504, and emotional damages are not recoverable under §504, emotional damages are also not recoverable under Title II of the ADA.

Altogether, Plaintiffs cannot recover any damages for their claims. In addition to failing to allege facts that satisfy all of the elements for a claim under either the ADA or §504, Plaintiffs

14

have failed to seek any relief that can be legally granted. Therefore, it is proper for this court to dismiss claims under the ADA and §504 from this Complaint.

### III.     IDEA Claim Should be Dismissed

The third cause of action seeks damages under §1983 for a denial of a FAPE and should be dismissed for lack of subject matter jurisdiction. No administrative process was started for Ryan, and Plaintiffs failed to exhaust administrative remedies. IDEA requires exhaustion of administrative remedies before a claim can be brought, *See* 20 U.S.C. §1415(i)(2)(a). The third cause of action is explicitly dealing with the alleged denial of FAPE, so there is no question about the gravamen of the Complaint.

> Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review.

*J.B. ex rel. Bailey v. Avilla R-XIII Sch. Dist.*, 721 F.3d 588, 594 (8th Cir.2013). Further, two recognized exceptions to the exhaustion requirement are "futility" and lack of a recognized "administrative remedy." Plaintiffs argue that any administrative remedies under the IDEA would be "futile" and "inadequate" (Complaint ¶ 8). However, exhaustion is not excluded automatically simply because Plaintiffs allege it. *Id.* at 596. Also, unavailability of a particular form relief does not excuse the exhaustion requirement. *Id.* at 595.

Under the IDEA any party that is aggrieved, whether parents or the school itself, may "present a complaint ... with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a [FAPE] to such child." *see* 20 U.S.C.

§1415(b)(6). The party can then elect to have their complaint investigated by the state educational agency, or they can request a due process hearing. 20 U.S.C. §1415(f). If the party wishes to appeal the decision from the due process stage, they then have the right to appeal to a district court of the United States. §1415(i)(2)(A). The district court can then grant reimbursement for private education (retrospective), and compensatory education (prospective).

Parties aggrieved regarding the substance of a child's IEP must still follow the procedural safeguards of the IDEA for controversies surrounding the provision of a FAPE. 20 U.S.C. §1415(l). Plaintiffs in the case at hand have stated that the administrative remedies (filing a complaint with the state educational agency, requesting a due process hearing, appealing to the district court) under the IDEA would be futile (Complaint ¶ 54) and inadequate (Complaint ¶ 55). However, that is not enough to survive the motion to dismiss. There is no disputing that the third cause of action is seeking relief for the denial of FAPE, and no dispute that it failed to exhaust administrative remedies.

### IV.  Plaintiffs' Claim for "State-Created Danger" Under 42. U.S.C. §1983 Should be Dismissed

As a general rule:

[N]othing in the language of the Due Process Clause requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security…[I]ts language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means.

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). However, courts have established that "the state owes a duty to protect individuals if it created the danger to which

the individuals are subjected." *Anderson as trustee for next-of-kin of Anderson v. City of Minneapolis*, 934 F.3d 876, 881 (8th Cir. 2019) (quoting *Hart v. City of Little Rock*, 432 F.3d 801, 805 (8th Cir. 2005). This "state-created danger" exception applies if Plaintiffs can show that: (1) Ryan was a member of "limited, precisely definable group;" (2) Defendants' conduct put Ryan at a "significant risk of serious, immediate, and proximate harm;" (3) the risk was "obvious and known" to Defendants; (4) Defendants "acted recklessly in conscious disregard of the risk;" and (5) that, in total, Defendants' conduct "shocks the conscious." *See Field v. Abbott*, 652 F.3d 886, 891 (8th Cir. 2011) (quoting *Hart*, 432 F.3d at 805). Here, Plaintiffs failed to state a claim for the "state-created danger" exception under 42 U.S.C. §1893 in violation of the Fourteenth Amendment because they did not allege facts that plausibly meet the elements.

### a. Defendants' Conduct Did Not Put Ryan at a "Significant Risk of Serious, Immediate, and Proximate Harm"

Plaintiffs allege that Defendants put Ryan at significant risk of serious, immediate, and proximate harm when they left Ryan unattended and permitted him leave school grounds. (Complaint ¶ 61). However, as noted by Plaintiffs, a state-created danger claim is only plausibly actionable if the state actor "affirmatively created the danger that causes harm to an individual." (Complaint ¶ 57). In other words, "if the state acts affirmatively to place someone in a position of danger that he or she would not otherwise have faced, the state actor, depending on his or her state of mind, may have committed a constitutional tort." *S.S. McMullen*, 225 F.3d 960, 962 (8th Cir. 2000). Furthermore, numerous courts have held that a failure to act is not an affirmative act under the state-created danger theory…" *Jones v. Reynolds*, 438 F.3d 685, 691 (6th Cir. 2006) (quoting *Cartwright v. City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003)); *see also Bullard v. Inskster Housing and Re-Development Com'n*, 126 Fed.Appx. 718, 720 (6th Cir. 2005) (failing to provide adequate security measures for apartment door to prevent break-ins was not an affirmative act).

In *Stevens v. Umsted*, 131 F.3d 697, 699-700 (7th Cir. 1997), it was alleged that a school superintendent failed to stop the repeated sexual assault of a blind and developmentally disabled student by other students, even after the superintendent had knowledge of the assaults. For the state-created danger claim, the Seventh Circuit held that the complaint was phrased entirely in terms of the superintendent's failure to act, and thus, did not allege an affirmative act by the state. *Id.* at 705. "'[T]he most that [could] be said of the state functionaries…is that they stood by and did nothing when suspicious circumstances dictated a more active role for them.'" *Id.* (quoting *DeShaney*, 489 U.S. at 203). However, the Seventh Circuit noted that "'inaction by the state in the face of a known danger is not enough to trigger the obligation [to protect private citizens from each other.]'" *Id.* (quoting *Reed v. Gardner*, 986 F.2d 1122, 1125 (7th Cir. 1993). Therefore, there were insufficient facts for the state-created danger claim to survive a motion to dismiss. *Id.* at 706.

Here, Plaintiffs' Complaint is similarly phrased in terms that lack any affirmative action on the part of Defendants. Instead, Plaintiffs' allegations are based on facts such as Defendants' failure to stop Ryan from walking out of the school unattended or to make an immediate attempt to retrieve him (Complaint ¶¶ 27-28). Even if Defendants had knowledge of Ryan's disabilities and his propensity, this is not enough factual content to plausibly infer that Defendants made any concerted efforts to actually place Ryan in a position of danger; at the most, it can only be claimed that Defendants stood by and did nothing when the circumstances may have called for further action. Again, this inaction cannot satisfy the necessary requirements for bringing a state-created danger claim.

Additionally, even if it could be inferred that Defendants satisfied the affirmative action requirement for a state-created danger claim, there was no plausibly immediate or proximate harm to Ryan during the incident in question that was the result of Defendants' actions. "In almost every

circuit court decision imposing Section 1983 liability because the state affirmatively created or enhanced a danger, 'the immediate threat of harm has a limited range and duration.'" *Dorothy J. v. Little Rock School Dist.*, 7 F.3d 729, 733 n. 4 (8th Cir. 1993) (quoting *Reed*, 986 F.2d at 1127).

Here, Plaintiffs alleged in their Complaint that Defendants' actions were a direct cause of Ryan's disappearance. (Complaint ¶ 63). However, at most, leaving Ryan unattended can only be directly consequential of Ryan walking out the school, but even that is a stretch. Plaintiffs have not alleged the existence of any credible threat that Ryan would have come into contact with upon his elopement. In fact, as noted by Plaintiffs, there is still no concrete understanding of what befell Ryan that would have actually caused his disappearance. (Complaint ¶¶ 29-30). Therefore, it cannot be plausibly argued that leaving Ryan unattended directly and proximately caused his disappearance if that actual cause was some unknown threat. Rather, Ryan's disappearance was caused by Ryan, in that Ryan chose to leave school grounds. Additionally, the chain of causation was broken by a subsequent threat that was a superseding cause of the harm, which relieves the Defendant's liability for the disappearance. *See Finocchio v. Mahler*, 37 S.W.3d 300, 303 (Mo. App. 2000) (noting that "courts show great reluctance to hold a defendant liable if the chain of causation include a series of events, subsequent to the initial action or omission, over which the defendant has absolutely no control.")

### b. The Risk of Ryan's Disappearance Was Not "Obvious and Known" to Defendants

Plaintiffs allege that Defendants knew of Ryan's need to be supervised due to his history of elopement, yet he was able to leave the school unattended anyway during the incident in question. (Complaint ¶ 23-26). However, for the purposes of a state-created danger claim, the relevant question is not whether Defendants were generally aware of the risk of Ryan running away again. Rather, Plaintiffs must prove that Defendants actually considered the specific risk of

Ryan disappearing during the incident in question. See *Hart*, 432 F.3d at 807. If Plaintiffs do not have the factual content to support such a level of consideration, then the risk of Ryan's disappearance was not "obvious and known" to Defendants.

When dealing with similar fact patterns, courts have held that such threshold was not met by the plaintiff. For example, in *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 904 (3d Cir. 1997), a teacher was shot to death in her classroom after a mentally unstable killer was able to enter the school through a rear entrance left unlocked for ongoing construction. The Third Circuit held that the school district could not have foreseen that allowing construction workers to use an unlocked entrance would result in the murder being committed. *Id.* at 109. Therefore, the chain of events to uphold the school district's liability for a state-created danger claim was too attenuated. *Id.* To support its holding, the Third Circuit first noted that the plaintiff's complaint did not allege that the school district was aware of the killer's violent propensities or of any threats made against school personnel. *Id.* Rather, the only arguably related allegation was that the killer had been seen loitering around the school during the prior week, which was not enough to put the school on notice of any possibility of the teacher's murder. *Id.* Second, there was no allegation that the school district was aware of any third-party posing a credible threat inside the school. *Id.* Even though the complaint alleged that the school district was aware of previous 'security breaches,' it did not allege that any mentally unstable third-party had previously entered the school, or that Defendants were aware of such a likelihood. *Id.*

Here, there is a similarly a lack of such factual support in Plaintiffs' Complaint. Even if Defendants were aware of Ryan's propensity to run away, he had always returned or had been able to be retrieved leading up to the incident in question. Plaintiffs have not, however, alleged any facts to support the inference that Defendants were on notice of the possibility that Ryan would

not return or would not have been able to be retrieved due to any change in Ryan's behavior or to any credible threat to Ryan during or around the time of the incident in question. Again, there is no concrete understanding of what befell Ryan that would have caused his disappearance. (Complaint ¶ 29-30). If Plaintiffs have not alleged any facts regarding the credibility of any threat to Ryan outside of the school, it cannot be assumed that the risk of Ryan's disappearance was "obvious and known" to Defendants specifically during the incident question. Attempting to attach such liability to Defendants for a disappearance caused by a wholly unknown threat is beyond too attenuated. It is unfounded.

### c.   Defendant Did Not Act "Recklessly in Conscious Disregard of Any Risk to Ryan

Plaintiffs allege that the Defendant acted "recklessly and in conscious disregard of the risk Ryan posed to himself when they ignored their knowledge of his disability and watched him walk out of the school building without attempting to retrieve him." (Complaint ¶ 62). However, it is not enough for Plaintiffs to show that Defendants may have increased a possibility of harm to Ryan. Rather, Plaintiffs must "prove that the state actors know of or suspected the specific risk facing plaintiffs and consciously ignored it" or failed to stop it once the risk was discovered. *See J.H. ex rel Higgin v. Johnson*, 346 F.3d 788, 792 (7th Cir. 2003). Conscious disregard, or deliberate indifference, has also been defined by the Supreme Court for purposes of the Eighth Amendment as when an official is aware of facts from which an inference could be drawn that a substantial risk of serious harm exists, and draws the inference. *Hart*, 432 F.3d at 802 (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). In other words, Plaintiffs must allege facts showing that Defendants were consciously aware of whatever the risk was that ultimately caused Ryan to disappear.

In *Leffall v. Dallas Independent School Dist.*, 28 F.3d 521, 523 (5th Cir. 1994), a student attending a high school dance was shot in the head after several students congregated in the school

parking lot and began randomly firing handguns in the air. The victim's mother brought a state-created danger claim alleging that the school district took inadequate safety measures to prevent the shooting despite their knowledge that students in the district often carried and fired weapons on school property. *Id.* The Fifth Circuit held that the school district did not act with deliberate indifference, noting that it was not a case in which "the state knowingly brought the victim into close proximity with a specific individual known to be likely to commit violence…or abandoned the victim in a highly dangerous environment…" *Id.* at 532.

Here, there is an even stronger case that the same conclusion should be reached. Based on Plaintiff's complaint, it cannot plausibly be said that Defendants knowingly allowed Ryan to come into close proximity with, or did nothing to stop, whatever was the cause of his disappearance. Unlike in *Leffall*, there is no allegation showing that Defendants were aware of any credible threat to Ryan's safety during or around the time of the incident in question. (Complaint ¶¶ 29-30). Again, it may be argued that Defendants' awareness of Ryan's disabilities and history of elopement is enough support for the allegation. However, these facts only go to general risks – there is no specificity that is required for this element. In other words, it would be impossible to say that Defendants acted recklessly and in conscious disregard to the possibility of Ryan disappearing if there is still uncertainty regarding what actually caused the incident in question.

### d.  *Defendants' Conduct Does Not "Shock the Conscience"*

Mere negligence can never be conscience shocking and cannot support a claim alleging a violation of substantive due process rights. *Hart*, 432 F.3d at 805. "The constitutional concept of conscience shocking duplicates no traditional category of common-law fault, but rather points clearly away from liability, or clearly toward it…" *County of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998). "[L]iability for negligently inflicted harm is categorically beneath the threshold of

constitutional due process." *Id*. at 849. Instead, "actionable substantive due process claims involve a level of…abuse of power so brutal and offensive that [they do] not comport with traditional ideas of fair play and decency." *Avalos*, 382 F.3d at 800 (quoting *S.S.* 225 F.3d at 964); *see also In re Scott County Master Docket*, 672 F.Supp. 1152, 1166 (D.Minn. 1987) (substantive due process violations involve conduct "so sever…so disproportionate to the need presented, and…so inspired by malice or sadism rather than merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience."

Plaintiffs alleged in their Complaint that Defendants "deliberately" leaving Ryan unattended with knowledge of his disabilities amounted to behavior that "shocks the conscience." (Complaint ¶ 63). However, as noted above, the standard for deliberate indifference requires Plaintiffs to allege that Defendants knew of a credible and specific risk to Ryan. *See J.H.*, 346 F.3d at 792. Furthermore, case law seems to instruct a court that if the facts are not clearly conscience shocking, then they constitute nothing more than mere negligence. For example, in *Sutherlin v. Independent School Dist. No. 40 of Nowata County*, Okla., 960 F.Supp.2d 1254, 1262 (N.D.Okla. 2013), the court held that there was no substantive due process violation—merely "bad judgement and insensitivity"—where school district officials witnessed and ignored a disabled student being physically and verbally assaulted by classmates, and failed to investigate numerous incidents of harassment. Here Defendants' alleged failure to stop or retrieve Ryan similarly fails to plausibly allege a substantive due process violation. Again, it would be impossible to say that Defendants deliberately ignored the specific risk that caused Ryan to disappear if there is no understanding of what befell him during the incident in question. Furthermore, Defendants standing by can amount to, at most, common tort law rather than substantive due process. Even if the case is close, it is not clearly conscience shocking.

**V.      State Tort Claim of Negligent Supervision Should Be Dismissed Because PLCS Has Not Waived Sovereign Immunity.**

Plaintiffs' claim that PLCS negligently supervised Ryan, leading to his disappearance, should be dismissed according to Fed. R. Civ. P. 12(b)(1) because PLCS is immune from suit under Neb. Rev. Stat. §13-903, the PSTCA. Public school districts are political subdivisions under the PSTCA and PLCS is a public-school district. Neb. Rev. Stat. § 13-901(1).

### a.   PLCS is Immune from Suit Under the Political Subdivision Tort Claims Act Because PLCS Staff were following Federal Law, State Law, and District Policy

PLCS is entitled to a dismissal as sovereign immunity has not been waived for this type of claim. Sovereign immunity is jurisdictional in nature, if sovereign immunity is found to apply, the trial court lacks subject matter jurisdiction over the action. *State ex rel. Rhiley v. Nebraska State Patrol*, 301 Neb. 241, 917 N.W.2d 903 (2018). Subject matter jurisdiction cannot be waived and the existence of subject matter jurisdiction cannot be agreed upon by the parties or conferred on the parties based on their conduct. *Id.* at 507-508, 563 N.W.2d at 348. PLCS affirmatively alleges it is immune from suit under Neb. Rev. Stat. § 13-910.

PLCS is immune from this suit under the PSTCA. Section §13-910(1) states the PSTCA shall not apply to: "Any claim based upon an act or omission of an employee of a political subdivision, exercising due care, in the execution of a statute, ordinance, or officially adopted resolution, rule, or regulation, whether or not such statute, ordinance, resolution, rule, or regulation is valid." Defendants were at all relevant times excising due care under Neb. Rev. Stat. §§ 79-1110-1167 (the "Special Education Act") and the IDEA. Because Defendants were exercising due care under state and federal statutes, this case should be dismissed because this court lacks jurisdiction to hear this case as PLCS has not waived sovereign immunity.

In *Reiber v. Cty. of Gage*, 303 Neb. 325, 928 N.W.2d 916 (2019), the Nebraska Supreme Court held that jail officials were following jail regulations and that therefore Gage County was immune from suit under the PSTCA. The court reasoned,

> However, §13-910(1) provides that political subdivisions are immune from suit under the PSTCA for actions based upon the acts or omissions of an employee exercising due care in the execution of a rule or regulation. If a claim comes within the exemption under §13-910(1), then the claim is barred by sovereign immunity and the political subdivision, officer, or employee cannot be liable. A suit that is barred by sovereign immunity is dismissed for lack of subject matter jurisdiction."

*Reiber* at 341,  928 N.W.2d at 341.

In the case at hand, Defendants were following the state Special Education Act; specifically: §79-1125, which states the definition of special education; §79-1126, which defines to whom the special education act applies; and §79-1127, which outlines the duties of school boards and districts to follow the IDEA.

At all relevant times Defendants were implementing and following the IEP that had been developed according to the IDEA, Nebraska state law, and PLCS District policies relating to the education of children with disabilities. Because Defendants were executing federal and state statutes, and PLCS district policy, with due care, PLCS has not waived sovereign immunity under Neb. Rev. Stat. § 13-910(1) and this claim should be dismissed under Fed. R. Civ. P. 12(b)(1).

### b. PLCS is Immune from Suit Under the Political Subdivision Tort Claims Act Because PLCS was Exercising a Discretionary Function

The choice of the plans, scheduling, and how to supervise Ryan were exercised with due care and how to implement certain portions of the IEP and educate Ryan are up to PLCS'

discretion. PLCS had a choice regarding when and how Ryan would move between classrooms, and PLCS exercised that choice in a framework that allowed discretion as to the details of his scheduling and movements, including allowing Ryan at times to not be directly supervised by PLCS staff.

The "discretionary function exemption," Neb. Rev. Stat. §13-910(2), states that the PSTCA does not apply to, "any claim based upon the exercise or performance of or the failure to exercise or perform a discretionary function or duty on the part of the political subdivision or an employee of the political subdivision, whether or not the discretion is abused."

A court must engage in a two-step analysis to decide whether to apply the exception of discretionary function under §13-910(2) of the PSTCA by determining; (1) whether there was a matter of choice in a disputed decision, and (2) whether that judgment was the kind that the discretionary function exemption was designed to shield. *Clark v. Sargent Irrigation Dist.*, 311 Neb. 123, 971 N.W.2d 298, 310 (2022). "The purpose of the discretionary function exception of…the PSTCA is to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of action in tort." *Lambert v. Lincoln Pub. Schs*, 306 Neb. 192, 945 N.W.2d 84 at 90 (2020). The exception does not apply to situations in which there is no room for a decision *Id.* at 199. It is the "nature of the conduct" rather than the "status of the actor" that controls the application of the exception. *Id.* at 199.

In *Lambert* a child was bitten by a dog after school hours. *Id.* at 194, 945 N.W.2d at 87. The family sued the school under the PSTCA alleging that the school was negligent in allowing dogs on school grounds. *Id.* at 194-95, 945 N.W.2d at 87. While the school district had a general policy that dogs were not allowed to run "at large" on any school ground, *Id.* at 196, 945 N.W.2d at 88, the school exercised its discretion to have a more restrictive no dogs allowed policy during

26

the school day. *Id.* However, the school chose not to enforce this policy after school hours. *Id.* at 197, 945 N.W.2d at 88. Plaintiffs alleged that the school did not have the right to make that decision, *Id.*, but the court disagreed, holding;

> LPS policies give individual school administrators broad discretion as to what restrictions to place on the use of school buildings and grounds and how to utilize staff to supervise activities on school grounds. The record shows Sheridan administrators, in the exercise of this discretion, decided to establish and enforce a "no dogs" policy only during school hours and decided not to supervise the school playground area at all after students have been dismissed for the day.

*Id.* at 202, 945 N.W.2d at 91 (2020).

In the present case, while constrained by federal law, state law, and district policy, individual schools have the discretion to make decisions regarding the minutia of how a student on an IEP will receive the rights conferred on them according to those statutes, regulations, and policies. Certainly, schools have the ability to decide how and when a student will move around a building when their IEP does not mandate constant direct supervision. PLCS exercised its discretion by adopting a plan and schedule for Ryan to follow, and therefore PLCS has not waived sovereign immunity under Neb. Rev. Stat. § 13-910(2) and this claim should be dismissed under Fed. R. Civ. P. 12(b)(1).

**VI.     Plaintiffs' Claim for Negligent Infliction of Emotional Distress Should be Dismissed**

In addition to it being necessary to dismiss Plaintiffs' claim for negligent infliction of emotional distress ("NIED") under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, as PLCS has not waived sovereign immunity under Nebraska's PSTCA, Plaintiffs' claim for NIED should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief

can be granted. NIED has a high a standard. Plaintiffs' factual allegations leave unmended a causal break in the link between the allegation that PLCS allowed Ryan to walk out of school and the alleged severe emotional distress of Ms. Larsen. The allegation that Ms. Larsen suffers from, and must be treated for, severe emotional distress is a threadbare legal conclusion offered as a factual allegation, and there is no factual allegation of an injury to Ryan as a victim intimately related to Ms. Larsen. *Vanicek v. Kratt*, No. 8:21-CV-49, 2022 U.S. Dist. LEXIS 234570 (D. Neb. Oct. 25, 2022)

NIED claims are analyzed under a "bystander" or "zone-of-danger theory". *Catron v. Lewis*, 271 Neb. 416, 420-21, 712 N.W.2d 245, 248-49 (2006). Given the allegations in the Complaint, it is likely Plaintiffs have alleged a bystander claim. A bystander claim is "…based upon an intimate familial relationship with a seriously injured victim of the defendant's negligence." *Id.*

Under Nebraska law a plaintiff may recover for negligent infliction of emotional distress if the following are proved: "(1) a seriously injured victim as the result of the proven negligence of the defendant, (2) an intimate familial relationship with the victim, and (3) emotional distress so severe that no person could be expected to endure it." *Vosburg v. Cenex-Land O'Lakes Agronomy Co.*, 245 Neb. 485, 488, 513 N.W.2d 870, 873 (1994) (citing *Sell v. Mary Lanning Mem'l Hosp. Ass'n.*, 243 Neb. 266, 498 N.W.2d 522 (1993)).

In *Sell*, a mother was informed by a hospital, erroneously, that her son was killed in a motorcycle accident. *Id.* at 268, 498 N.W.2d at 523. The next day, the plaintiff and family began making funeral arrangements. *Id.* When Plaintiff was asked by the mortician to view the body, they became aware that it was not their son. *Id.* The plaintiff alleged that as a result of the negligence of the hospital, the plaintiff was continually crying, couldn't eat or sleep, and was

medicated so she could rest. *Id.* at 271, 498 N.W.2d at 525. The physician who informed her of her son's purported death stated she was in a "state of shock", and her husband described her as a "basket case," *Id.* at 272, 498 N.W.2d at 525. Yet the Court stated:

> Without minimizing plaintiff's apparent and understandable heartache upon being told of her son's death, we find that an action for emotional distress is a particular type of legal action which requires emotional distress…so severe that no reasonable person could have been expected to endure it, emotional distress evidencing sufficient severity that it is medically significant. Under that standard, plaintiff failed to present a prima facie case of negligent infliction of emotional distress.

*Id.*

In *Vosburg,* it was allegation that a mother was negligently exposed to various chemicals and caused multiple injuries overtime, and then her children alleged that they suffered mental anguish witnessing their mother deal with the alleged injuries. The Court held that there was no single event such as a violent injury giving rise to the mother's suffering and that the manner in which the children learned of the injuries was not sudden and shocking. *Vosburg*, 245 Neb. 485 at 490, 513 N.W.2d at 873-74.

Plaintiffs' NIED claim fails at the beginning because the first element cannot be satisfied. There is no casual connection between an alleged injury to Ryan and Ms. Larsen's alleged emotional distress. Plaintiffs are not able to point to any injury to Ryan. Plaintiffs allege that Ryan disappeared, but Plaintiffs are unable to allege more. Furthermore, it cannot be assumed that Ryan is dead, because the County Court of Sarpy County entered an Order denying the Petition for Presumption of Death. (Complaint ¶11). Without a severe injury, there cannot be a claim. There is

no Nebraska caselaw on point to suggest that disappearance is an injury sufficient to support a claim for negligent infliction of emotional distress.

Also, there is no allegation that the manner in which Ms. Larsen learned about Ryan's disappearance was either sudden or shocking. This element is analyzed on a spectrum considering the shock in terms of where, when and how the injury entered in the plaintiff's consciousness. *Vanicek*, No. 8:21-CV-49, 2022 U.S. Dist. LEXIS 234570 (citing *Vosburg,* at 490, 513 N.W.2d 870 at 873. In the case at hand there are no facts alleged to show a contemporaneous reaction. Furthermore, the allegation that Ms. Larsen now suffers from severe emotional distress is a threadbare recital of a legal conclusion. There is a high threshold for the severity of emotional distress in NIED claims. *Id.* (citing *Hamilton v. Nestor,* 265 Neb. 757, 768, 659 N.W.2d 321, 329 (2003)). The emotional distress needs to be "so severe that no reasonable person could be expected to endure it." *Hamilton* at 768, 659 N.W.2d at 329 (2003).

Because there is no allegation that death or serious injury occurred to Ryan, Plaintiffs' claim for NIED should be dismissed for failure to state a claim. Indeed, there is also a lack of a causal connection to Ms. Larsen's alleged emotion distress. Further, Plaintiffs have failed to plead with adequate sufficiency in their claim that Ms. Larsen suffers from distress so severe that no reasonable person could be expected to endure it. Nor have Plaintiffs plead with the adequate sufficiency that Ms. Larsen's alleged emotion distress was caused by a sudden injury and not several acts that took place over time.

## CONCLUSION

For the foregoing reasons, PLCS respectfully requests that this Court dismiss the entirety of Plaintiff's Complaint for failure to state a claim upon which relief can be granted and for lack of subject matter jurisdiction.

DATED: July 14, 2023

SARPY COUNTY SCHOOL DISTRICT 77-
0027, d/b/a PAPILLION LA VISTA
COMMUNITY SCHOOLS DISTRICT,
Defendant

By: /s/ Charles E. Wilbrand

Charles E. Wilbrand - # 24888
Grant M. Paschke - #27747
KNUDSEN, BERKHEIMER,
RICHARDSON & ENDACOTT, LLP
3800 VerMaas Place, Suite 200
Lincoln, Nebraska 68502
(402) 475-7011
Fax: (402) 475-8912
cwilbrand@knudsenlaw.com
gpaschke@knudsenlaw.com

## **CERTIFICATE OF COMPLIANCE**

Pursuant to NECIVR 7.1(d)(3), I hereby certify that this brief complies with the applicable word
limits. Specifically, this brief contains 9,628 words using proportional spacing and 12-point type
(Times New Roman font for Microsoft Word), excluding the Certificate of Compliance and
Certificate of Service. The brief has been prepared using Microsoft Word 2019 and Adobe
Acrobat Professional 11.

/s/Charles E. Wilbrand
Charles E. Wilbrand

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 14, 2023, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which sent electronic notice of the filing to the registered attorneys of the record in this matter, including Plaintiff's attorneys indicated below:

Sean M. Conway
Chandler | Conway, PC LLO
1018 Dodge Street, Suite 5
Omaha, NE 68102
sean@chandlerconway.com

and

Michael B. Duffy
Fraser Stryker, PC LLO
500 Energy Plaza
409 South 17th Street
Omaha, NE 68102
mduffy@fraserstryker.com

By: /s/Charles E. Wilbrand
Charles E. Wilbrand