IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| TAMMI LARSEN, in her individual capacity, and as natural parent and legal guardian of RYAN LARSEN, a minor child,<br><br>Plaintiffs,<br><br>v.<br><br>SARPY COUNTY SCHOOL DISTRICT 77-0027 d/b/a PAPILLION LA VISTA COMMUNITY SCHOOL DISTRICT, and JANE DOES 1-3, individually, and in their official capacities,<br><br>Defendants. | CASE NO. 8:23-cv-00190<br><br><br><br>**REPLY BRIEF TO PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION TO DISMISS** |

SARPY COUNTY SCHOOL DISTRICT 77-0027, d/b/a PAPILLION LA VISTA COMMUNITY SCHOOLS DISTRICT ("PLCS" or "School District" of "Defendants"), pursuant to NECivR 7.1(c) respectfully submit this brief in reply to Plaintiffs' brief in opposition to Defendant's motion to dismiss. The Complaint for Tammi Larsen ("Ms. Larsen"), individually and on behalf of her son Ryan Larsen, ("Plaintiffs") should be dismissed in its the entirety for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

**ARGUMENT**

I. **Ryan Larsen has not been presumed dead.**

Despite Plaintiff's arguments in its Complaint and Opposition Brief, this Court should not accept as true that Ryan Larsen died or probably died, because a Nebraska Probate Court has already ruled that there is not sufficient evidence to make such a conclusion. Plaintiff filed a Petition for Appointment as Special Administrator of the Estate of Ryan Larsen and filed a Petition

1

for Presumption of Death of Missing Individual in the County Court of Sarpy County, Nebraska, and presented evidence and arguments. (ECF 1, ¶¶ 9-10). The County Court of Sarpy County ruled that the evidence presented was insufficient to conclude that Ryan Larsen probably died than rather survived. (*In The Matter of Special Administration of Ryan Larsen*, County Court of Sarpy County PR 23-17, Order dated April 27, 2023) (ECF 1, ¶11). The existence of this order means, this Court cannot hold it as true that Ryan Larsen is dead, or is even probably dead. Therefore, Plaintiffs cannot claim Ryan is dead, even though they repeatedly cite that his death is "probable" in their brief. (ECF 8). For instance, Plaintiffs state in their Brief in Opposition, "Oddly enough, the Defendants first argue that Larsen has not stated a claim because she has not alleged an injury to Ryan. Undoubtedly, the death of her son constitutes such a 'severe injury' to state a claim." (ECF 1at ¶31)." Plaintiffs are attempting to form this case into a thinly-veiled wrongful death action even though they have failed to provide any evidence of Ryan's death. The effect of the Sarpy County Court's ruling on the claims will be discussed below.

II. The Court Should Dismiss Plaintiff's ADA/504 Claims

   A. Exhaustion is still required.

Defendants still believe that the facts of *Perez* are distinguishable from this case, mainly that the plaintiff in *Perez* had already settled the IDEA claim. *Perez v. Sturgis Pub. Sch.*, 143 S. Ct. 859, (2023). Nonetheless, Plaintiffs still need to exhaust their claims if the remedies they are seeking are available under IDEA, as well as ADA and §504. *Id.* at 864. While the Complaint does not explicitly say Plaintiffs are seeking a particular kind of equitable relief, there is an IDEA claim included, and the Complaint says that it seeks relief that is "just and equitable." If any of the "just and equitable" remedies are remedies under IDEA then the Plaintiffs have failed to exhaust. Further, attorney fees are available under IDEA which should also require exhaustion. *Id*. The U.S.

Supreme Court did not address whether compensatory damages are actually available in ADA and 504 claims, which as explained below, they are not. *Id.* at 865

### B. Rehabilitation Act and ADA Require Higher Pleading Standard

Plaintiffs must allege facts sufficient to satisfy three elements: (1) Ryan is a qualified individual with a disability; (2) he was discriminated against by being denied the benefits of a program or activity of a public entity receiving federal funds; and (3) he was discriminated against based on his disability. *Brown v. City of Jacksonville*, 711 F.3d 883, 888 (8th Cir. 2013) (citing 42 U.S.C. §12131 et seq.); *Estate of Barnwell by and through Barnwell v. Watson*, 880 F.3d 998, 1005 (8th Cir. 2018). Here, Plaintiffs failed to state a claim for violation of both the ADA and §504 because they did not allege facts that plausibly meet the second and third element. Plaintiffs allege that Ryan was, "denied benefits of the School District's programs." (ECF 1, ¶40). In Plaintiff's Brief in Opposition (ECF 8) they state the School District failed to accommodate Ryan's need for supervision. This does not delineate a "program" or an "activity" sufficient under the ADA and §504. The second element that Plaintiffs must sufficiently plead is not met because what they are really alleging is some kind of educational malpractice, and "the ADA and §504 do not 'creat[e] general tort liability for education malpractice,' bad faith or gross misjudgment requires "something more" than mere non-compliance with the applicable federal statutes." *B.M. ex rel. Miller*, 732 F.3d at 887 (quoting Monahan v. Nebraska, 687 F.2d 1164, 1170 (8th Cir. 1982)).

Plaintiffs assert that allowing Ryan to be unsupervised, despite Defendants being aware of his disabilities and history of elopement, amounted to "deliberate indifference" and a "gross departure from professional judgment, standards and practice…" (ECF, 1, ¶¶ 37-38). However, Plaintiffs have also not alleged any facts, such as standards shared by qualified professionals that work with disabled students like Ryan, to show that the lack of supervision was totally

3

unacceptable in those circumstances. There are no allegations of what was actually required by Ryan's IEP, or whether there was any departure from the IEP. There are allegations about supervision, but there is not an allegation of what the IEP actually required. Without more than just their assumptions, Plaintiffs essentially claim that Ryan should not have ran away from school, but that does not meet the heightened standard for a violation of the ADA and §504.

Indeed, Plaintiffs are attempting to turn an alleged negligence claim into a violation of §504 and the ADA, which does not meet the standard. "So long as the state officials involved have exercised professional judgment, in such a way as not to depart grossly from accepted standards among educational professionals, [the Court] cannot believe that Congress intended to create liability…" *Monahan v. Nebraska,* 687 F.2d 1164, 1170, 1171 (8th Cir. 1982). Again, there is no factual content to plausibly show that Defendants were acting in bad faith or with gross misjudgment or deliberate indifference. Further, it is not enough to just say that the School District did not provide an appropriate public education. The cases that Plaintiff cites are about general duties for negligence purposes, as *Greening v. Sch. Dist.*, 223 Neb. 729, 393 N.W.2d 51, (1986) and *Johnson v. Sch. Dist.of Millard*, 253 Neb. 634, 573 N.W.2d 116, (1998) (although the case does not say constant and direct supervision was required) do not deal with ADA or §504, but rather negligence so they are not instructive. Whereas *D.C. v. Pittsburgh Pub. Sch.*, 415 F. Supp. 3d 636, 661 (W.D. Pa. 2019), does deal with the ADA and §504, but the part cited by the Plaintiffs is not within the IDEA, ADA, §504 analysis but rather in the section dealing with excessive force and similarly is not instructive or controlling in regarding the ADA/§504 claims. Plaintiffs' complaint does not allege that Defendants failed to implement appropriate accommodations either, so that is not conscience shocking as cited by Plaintiffs with *M.P. ex rel. K. v. Indep. Sch. Dist. No. 721*, 326 F.3d 975, 982-83 (8th Cir. 2003). In *M.P.*, the Court did not rule that the school

district acted in bad faith for delaying to implementing changes to a 504 plan, but it said **"One could…"** find that it was bad faith or gross misjudgment when the school allegedly failed to return the mother's repeated phone call, the proposals drastically alter MP's day or send him to a different school. *Id.* at 982 (emphasis added). *M.P.* had totally different facts in this case, and again the Complaint does not have allegations that the Defendants failed to implement changes or that it failed to return Larsen's repeated phone calls.

### C. Damages Sought Not Available Under ADA/504

First, Plaintiff, Ms. Larsen, lacks standing to sue on her own behalf because she is not an intended beneficiary of a federally funded program. *Chaney v. E. Cent. Indep. Sch. Dist.*, No. SA-21-CV-01082-FB, 2022 U.S. Dist. LEXIS 222065 (W.D. Tex. Dec. 9, 2022). Ms. Larsen can pursue a claim under ADA/504 on behalf of Ryan, but she does not have a separate claim. In *Chaney v. E. Cent. Indep. Sch. Dist,* the mother of a 7-year-old boy who committed suicide after being bullied brought both wrongful death claims as the purported administrator deceased's estate, and on her own behalf. The court ruled that the mother had standing to sue on her son's behalf under Texas law," as his heir at law and representative of his estate." *Id.* at 9. Then court then ruled that the damages she sought on her own behalf were not available because she lacked standing to sue on her own behalf. *Id.* at 10. A plaintiff must be an intended beneficiary of, an applicant for, or a participant in a federally funded program in order to state a claim under Title VI. *Simpson v. Reynolds Metals Co.*, Inc., 629 F.2d 1226, 1235 (7th Cir. 1980), and the intended beneficiaries of a federally funded public-school program are school children, not their parents. *Jackson v. Katy Indep. Sch. Dist.*, 951 F. Supp. 1293, 1298 (S.D. Tex. 1996). Therefore, the ADA and §504 claims of Larsen on behalf of herself should be dismissed because she lacks standing.

5

The claims on behalf of Ryan fail because the damages sought are not available under the ADA and §504. Emotional distress and punitive damages are not available under §504, and ultimately not available under the ADA either. *Cummings v. Premier Rehab Keller, P.L.L.C.* 142 S.Ct. 1562 (2022). Any reliance by Plaintiffs on contrary case law is misplaced, because *Cummings* supersedes and clarifies that case law. This Court has already applied *Cummings'* logic on available damages under the ADA, and ruled in the same way. *J.P. v. Nebraska*, No. 4:22-CV-3095, 2022 U.S. Dist. LEXIS 183492 (D. Neb. Oct. 6, 2022). In their Complaint, Plaintiffs assert that they are entitled to damages for Ryan suffering "the loss of experiencing a normal educational life, mental and emotional distress, [and] the loss of companionships of his mother and siblings…" (ECF 1 ¶ 79). In addition, it asserted that Ms. Larsen allegedly suffered "severe emotional distress caused by [Ryan's] disappearance, [and] the loss of his companionship since his disappearance…" (ECF 1 ¶ 80). These are all emotional damages, they are not contract damages. There is no claim for any out of pocket costs because there has not been any. In the opposition brief, Plaintiffs merely cite the emotional damages again and claim there are non-emotional damages, but they do not point to any sort of economic damages or contract damages, which are the only sort of recovery under ADA and §504. The Plaintiffs are the masters of the complaint, if there are certain contractual damages they would have been plead. Therefore, the claim on Ryan Larsen's behalf fails and should be dismissed.

### D. Jane Does – cannot be individually liable for ADA and 504

While the Jane Does have not been individually named or served yet, the ADA and §504 cannot apply to them. Title II of the ADA prohibits discrimination by "public entities." 42 U.S.C. § 12132. Individuals are not public entities under the statute. 42 U.S.C. § 12131(1). The same is

6

true for § 504 as it only applies to public entity receiving federal funds. 29 U.S.C. §794(b)(1). Therefore, the Jane Does cannot be held liable.

### III. Plaintiffs Have Not Followed the Administrative Guidelines of the IDEA and Claim Lacks Redressability.

As mentioned above, Plaintiffs' should be precluded from arguing that Ryan Larsen is dead or probably died given the Sarpy Court Probate Court's order. Exhaustion is still required prior to bringing a Complaint under IDEA. *J.B. ex rel. Bailey v. Avilla R-XIII Sch. Dist.*, 721 F.3d 588, (8th Cir.2013). The cases cited by the Plaintiff where futility is applied is when the student has died. Here, Ryan Larsen cannot be presumed dead. Beyond the attempt to circumvent exhaustion, it is unclear what purpose Plaintiffs' IDEA claim serves, or what cause of Plaintiffs' it advances. The Complaint, does ask for attorney fees and relief that is "just and equitable," but the Plaintiffs have not been explicit on such damages. If the IDEA claim cannot be redressed then it should be dismissed. To satisfy the redressability element of standing, Plaintiffs must show that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't Servs.* (TOC), Inc., 528 U.S. 167, 181, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 112 S. Ct. 2130 (1992)).

### IV. Plaintiff's State Created Danger Claim Should be Dismissed Because PLCS Did not Affirmatively Act to Place Ryan in More Dangerous Situation.

This claim fails because the elements cannot be met – there was no act, the risk was not obvious or known; there was no reckless disregard of the risk; and even if those other elements can be met, it does not shock the conscience. "Mere negligence is not conscience-shocking and cannot support a claim alleging a violation of a plaintiff's substantive due process rights." *Avalos v. City of Glenwood*, 382 F.3d 792, 799 (8th Cir. 2004) (citing *Terry B. v. Gilkey*, 229 F.3d 680, 684 (8th Cir. 2000)). Further, a State Created Danger Claim requires an affirmative act. *S.S. v. McMullen*, 225 F.3d 960, 962 (8th Cir. 2000). "The line between action and inaction has been

important in the law for centuries, but it has proven to be an elusive and thin one….” *Id.* at 963. Defendants cannot be liable for a constitutional tort because it did not act affirmatively to place Ryan in a position of danger that he would not otherwise have faced. Many of the cases cited by Plaintiffs are cases where there was an act of violence committed by a third party, there is no third party in this case. Further, the Defendants did not affirmatively place Ryan Larsen in a dangerous position nor did they create a dangerous environment. *Johnson v. Dall. Indep. Sch. Dist.*, 38 F.3d 198 , 201 (5th Cir. 1994).

Being in a classroom, in a public school, in the middle of a school day can hardly be described as an affirmative act. Allegedly being left alone in a classroom in the middle of a school day cannot be construed to be an affirmative act that put Ryan in a position of danger from private persons or himself. Despite the Plaintiffs' statement of it in their brief, there is no allegation that PLCS employees watched him walk out of the building, the Complaint says that that Ryan walked unattended out of the front doors of the school in the middle of the day. (ECF 1, ¶26). La Vista West Elementary has many students and no doubt many of the students walk around the school building and around campus every day including going outside and it's not a sufficiently dangerous situation for purposes of a constitutional tort. There is no way to know that Ryan Larsen was going to run away from the school just because he allegedly was in a classroom alone, or that he was walking in the hallway unaccompanied or that he walked out of the door. Ryan Larsen is not the only child in the school building and it is unreasonable to think that there needs to be a suspicion of risk for every student, or even just students with IEPs, who would do these things. Even if it is, it not conscience shocking. "Actionable substantive due process claims involve a level of . . . abuse of power. . . so brutal and offensive that [they do] not comport with traditional ideas of fair play

8

and decency." *Avalos*, 382 F.3d at 800 (quoting *S.S.*, 225 F.3d at 964 (citations omitted) (internal quotations deleted)).

Plaintiffs quote *Bowers v. De Vito*, 686 F.2d 616 (7th Cir. 1982), "When a state actor 'puts a [person] in a position of danger from private persons and then fails to protect him, it will not be heard to say that its role was merely passive; it is as much an active tortfeasor as if it had thrown him into a snake pit." Releasing someone from a mental hospital for treatment following an insanity defense is entirely different than having a student in a classroom or having students walk around the school unattended. *Bowers* was a case in which a state mental hospital released a schizophrenic patient who was placed in the mental hospital after being found not guilty by reason of insanity for stabbing someone to death. Upon release, that man then immediately murdered someone else. *Id.* Here, again, there is no alleged third-party actor that harmed Ryan Larsen. Nonetheless, the *Bowers* court stated, "But the defendants in this case did not place Miss Bowers in a place or position of danger; they simply failed adequately to protect her, as a member of the public, from a dangerous man." *Bowers* at 618. Defendants deny that they placed Ryan Larsen in a position of danger, and deny that they did not adequately protect Ryan.

The cause of Ryan leaving the school grounds was Ryan himself, as he is the one who decided to leave. *See Finocchio v. Mahler*, 37 S.W.3d 300, 303 (Mo. App. 2000) (noting that "courts show great reluctance to hold a defendant liable if the chain of causation includes a series of events, subsequent to the initial action or omission, over which the defendant has absolutely no control.") Plaintiffs rely on *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 245 (3d Cir. 2016) to establish that there was proximate cause in this case. *L.R.* involved a five-year-old child in kindergarten who was released to a stranger who subsequently sexually assaulted the student. The court held that the teacher choosing to release the student to the stranger was an affirmative act, and that it was

9

reasonably foreseeable that releasing the student to the stranger would result in harm. *Id.* This is different case for many reasons. Ryan Larsen was older, and despite his disabilities, he was not completely devoid of making choices or functioning. Further, in *L.R.* the child was released to a stranger, here the Defendants did not release Ryan to anyone. Nor did they tell Ryan to leave and go home. It is not like the school district choose to allow Ryan to elope. Ryan made the choice to leave the school building. There is no way to know that Ryan was going to run away and it certainly was not foreseeable. If let unattended in a classroom, it was more foreseeable that Ryan would not do his homework, but not that he would run away.

Even if the Court determines that the Defendants acted, that the risk was known and there was proximate cause, there is still no recklessness or anything that shocks the conscience. "To shock the conscience, . . . an official's action must either be motivated by an intent to harm, or where deliberation is practical, demonstrate deliberate indifference. . . . Mere negligence, or even gross negligence, is not actionable." *Villanueva v. City of Scottsbluff*, 779 F.3d 507, at 512 (8th Cir. 2015) (citing *Montgomery v. City of Ames*, 749 F.3d 689, 694-95 (8th Cir. 2014)). If there is an exercise of discretion then that is not a conscience-shocking disregard of Ryan Larsen's constitutional rights. *Id.* "Conscience shocking conduct only includes 'the most severe violations of individual rights that result from the brutal and inhumane abuse of official power.'" *Mitchell v. Dakota Cnty. Soc. Servs.*, 959 F.3d 887, 898 (8th Cir. 2020) (quoting White v. Smith, 696 F.3d 740, 757-58 (8th Cir. 2012)).

The cases cited by Plaintiffs do not hold for what the Plaintiffs say and both are distinguishable. In *Armijo ex rel. Chavez v. Wagon Mound Public Schools,* 159 F.3d 1253, 1262 (10th Cir. 1998), the Court did not conclude that releasing a student with suicidal thoughts to his home was conscience shocking, but rather that it **possibly could be** conscience shocking. *Id.* In

*Wood v. Ostrander*, 879 F.2d 583, 590 (9th Cir. 1989), a state trooper pulled a car over, had the car towed, and left Wood in an unsafe area of town, but the court did not conclude that such behavior was deliberately indifferent or conscious shocking, it held that there was a general issue of fact. *Id.*

Defendants dispute whether Plaintiffs have actually alleged that the School District has an unconstitutional policy or custom of denying appropriate accommodations as stated in footnote 1 of the opposition brief. (ECF ¶8). Also, while the Jane Does have not been named or served yet, they are not liable because they have qualified immunity. *Brown v. City of Golden Valley*, 574 F.3d 491, 495 (8th Cir. 2009). The standard for qualified immunity is "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). Any amendment of the complaint or discovery would be futile.

V. **Plaintiff's State Law Claims Should be Dismissed as PLCS Has Not Waived Sovereign Immunity.**

Plaintiffs are incorrect that this Court cannot look outside of Complaint on a Rule 12(b)(1) motion to dismiss, and if the court does, the motion is not converted into a motion for summary judgment. *See Drevlow v. Lutheran Church, Mo. Synod*, 991 F.2d 468, 470 (8th Cir. 1993) and *Deuser v. Vecera*, 139 F.3d 1190, 1191 n.3 (8th Cir. 1998). Jurisdiction is a threshold question and must be decided at the outset. *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). The cases cited by Plaintiffs do not hold for the idea that just because it is a question fact, that the 12(b)(1) motion to dismiss is premature at the pleadings stage.

"Under the PSTCA, a political subdivision has no liability for the torts of its officers, agents, or employees, except to the extent, and only to the extent, provided by the [PSTCA]." *Edwards v. Douglas Cty.*, 308 Neb. 259, at 266, 953 N.W.2d 744 (2021). When construing any statutory exemption under the PSTCA courts apply settled propositions of statutory construction. "Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of words which are plain, direct, and unambiguous." *Moser v. State*, 307 Neb. 18, 24, 948 N.W.2d 194, 200 (2020). The Nebraska Supreme Court strictly construes waivers of immunity in favor of a political subdivision. *Id* at 29, 948 N.W.2d at 203. "In order to strictly construe against a waiver of sovereign immunity, we broadly read exemptions from a waiver of sovereign immunity. "*Brown v. State*, 305 Neb. 111, 118, 939 N.W.2d 354, 359 (2020). "A waiver of sovereign immunity is found only where stated by the most express language of a statute or by such overwhelming implication from the text as will allow no other reasonable construction." *Edwards v. Douglas Cty.,* 308 Neb. 259, at 268, 953 N.W.2d 744 (2021). Sovereign immunity has not been waived in this case.

Plaintiffs' negligent supervision claim is directly tied to Ryan's IEP and that is why the Plaintiffs have attempted to bring the other causes of action in this case. As previously mentioned, Defendants were exercising due care under both Nebraska and Federal law in the education of Ryan and the implementation of his IEP. They are immune from suit under Neb. Rev. Stat. § 13-910(1).

Defendants are also immune under the discretionary function exception.

The purpose of the discretionary function exception is to prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.…Examples of

>discretionary functions include **the initiation of programs and activities, establishment of plans and schedules, and judgmental decisions within a broad regulatory framework lacking specific standards**. The exception, properly construed, therefore protects only governmental actions and decisions based on considerations of public policy. The political subdivision remains liable for negligence of its employees at the operational level, where there is no room for policy judgment.

*Security Inv. Co. v. State*, 231 Neb. 536, 544, 437 N.W.2d 439, 445 (1989) (emphasis added). *See KD, Next Friend of LD v. Douglas Cty. Sch. Dist. No. 001,* No. 8:17CV285, 2019 WL 5684397, at *12 (D. Neb. Nov. 1, 2019). This would include any formation of the IEP, implementing the IEP, lesson plans, breaks, and the appropriate supervision for students with IEPs.

>To determine whether the discretionary function exception applies, we have set out a two-step analysis. First, the court must consider whether the action is a matter of choice for the acting employee. Second, if the court concludes that the challenged conduct involves an element of judgment, it must then determine whether that judgment is of the kind that the discretionary function exception was designed to shield.

*McGauley v. Washington County*, 297 Neb. 134, 139-40, 897 N.W.2d 851, 856 (2017).

Both of these questions are answered in the affirmative. First, Plaintiffs are alleging negligence regarding the implementation of Ryan's IEP and his schedule. It is a matter of choice whether a student is allowed to be left alone in a classroom, walk the hallways alone to go to the restroom, the principal's office or perhaps another classroom. A student's IEP may be instructive, but there is still an element of choice involved in the implementation of the IEP and its function.

Notably, the Complaint does not say that Ryan's IEP required one-to-one supervision at all times. The Complaint is framed in an ambiguous way to say that Ryan needed to be supervised at all times because Ryan's history of running away. (ECF 1, ¶23). This is a key distinction, because how much supervision exists for the students is a matter of choice and certainly is a sliding scale as students get older. Secondly, the discretionary function is designed to protect policy decisions and sometimes there is the need for prompt action and decisions need to be made quickly. "The exception, properly construed, therefore protects only governmental actions and decisions based on considerations of public policy." *Sec. Inv. Co. v. State*, 231 Neb. 536, 545, 437 N.W.2d 439, 445 (1989). It is public policy decision on regarding the IEP and the supervision in accordance with the IEP, it is also a policy decision on student instruction, it is meant to protect judicial second guessing, and that is what the Plaintiffs are asking the Court to do in this case.

**VI. Plaintiff's Negligent Infliction of Emotional Distress Fails Because There is No Alleged Injury or Death**

Negligent Infliction of Emotional Distress is a high standard. Nebraska caselaw requires, in a "bystander" claim for negligent infliction of emotional distress, "[t]hat the foreseeable harm to the plaintiff arose from the death or serious injury of the victim." *Vanicek v. Kratt*, No. 8:21-CV-49, 2022 U.S. Dist. LEXIS 234570 (D. Neb. Oct. 25, 2022). Here, there is no death or serious injury. Plaintiffs claim in their Complaint that Ryan Larsen probably died or lost his life (ECF 1, ¶¶ 31, 79, 80) and state it repeatedly in their Opposition Brief (ECF 8). The Opposition Brief states, "Oddly enough, the Defendants first argue that Larsen has not stated a claim because she has not alleged an injury to Ryan. Undoubtedly, the death of her son constitutes such a 'severe injury' to state a claim." (Complaint at ¶31)." (ECF 8, p. 16). There are no other allegations or arguments of a serious injury in either the Complaint or the Opposition Brief.

As explained in Section 1, the County Court of Sarpy County has explicitly ruled that the evidence presented was insufficient to conclude that Ryan Larsen probably died rather than survived. This order has an effect on this Court, and it cannot be presumed for purposes of the motion to dismiss that Ryan is dead. In fact, the opposite has to be presumed. Therefore, Ryan has not suffered an injury which would allow Negligent Infliction of Emotional Distress claim and therefore, the claim fails.

Further, while Larsen did not need to witness Ryan leaving the school - where, when and how the notification of Ryan's injury (which there isn't one) to Larsen occurred is a factor in assessing the foreseeability of emotional injury to Larsen. *Vosburg v. Cenex-Land O'Lakes Agronomy Co.*, 245 Neb. 485, 488, 513 N.W.2d 870, 873 (1994). This element is difficult to meet given that a trigger of the emotional distress is hard to identify because there is no injury. Since claims under the PSTCA are tried to a judge and not a jury, a reasonable judge would need to decide that Larsen received the news in a shocking or sudden way. Finally, the Complaint is devoid of the high standard of allegations required to support the claim that Larsen experienced distress "so severe that no reasonable person could be expected to endure it." *Hamilton* at 768, 659 N.W.2d at 329 (2003).

## CONCLUSION

For the foregoing reasons, PLCS respectfully requests that this Court dismiss the entirety of Plaintiff's Complaint for failure to state a claim upon which relief can be granted and for lack of subject matter jurisdiction.

DATED: September 7, 2023

15

           SARPY COUNTY SCHOOL DISTRICT 77-0027, d/b/a PAPILLION LA VISTA COMMUNITY SCHOOLS DISTRICT,
           Defendant

By: /s/ Charles E. Wilbrand
    Charles E. Wilbrand - # 24888
    KNUDSEN, BERKHEIMER, RICHARDSON & ENDACOTT, LLP
    3800 VerMaas Place, Suite 200
    Lincoln, Nebraska 68502
    (402) 475-7011
    Fax: (402) 475-8912
    cwilbrand@knudsenlaw.com

## CERTIFICATE OF COMPLIANCE

Pursuant to NECIVR 7.1(d)(3), I hereby certify that this brief complies with the applicable word limits. Specifically, this brief contains 5020 words using proportional spacing and 12-point type (Times New Roman font for Microsoft Word), excluding the Certificate of Compliance and Certificate of Service. The brief has been prepared using Microsoft Word 2019 and Adobe Acrobat Professional 11.

    /s/Charles E. Wilbrand
    Charles E. Wilbrand

## CERTIFICATE OF SERVICE

    I certify that on September 7, 2023, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which sent electronic notice of the filing to the registered attorneys of the record in this matter, including Plaintiff's attorneys indicated below:

Sean M. Conway
Chandler | Conway, PC LLO
1018 Dodge Street, Suite 5
Omaha, NE 68102
sean@chandlerconway.com

and

Michael B. Duffy
Fraser Stryker, PC LLO
500 Energy Plaza
409 South 17th Street
Omaha, NE 68102
mduffy@fraserstryker.com

                                             By: /s/Charles E. Wilbrand
                                                  Charles E. Wilbrand